IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RAMON VASQUEZ** | : | **CIVIL ACTION** |
| | : | |
| v. | : | |
| | : | |
| **CITY OF READING, et al.** | : | **NO. 15-4297** |

## MEMORANDUM

**SCHMEHL, J.**                                                                                 **AUGUST 11, 2015**

Plaintiff Ramon Vasquez, a prisoner incarcerated at the Bucks County Jail, brings claims against several defendants stemming from a criminal complaint filed against him for unauthorized use of a motor vehicle. He seeks to proceed *in forma pauperis*. For the following reasons, the Court will grant Plaintiff leave to proceed *in forma pauperis* and dismiss his complaint with prejudice.

**I.  FACTS[1]**

The complaint asserts claims against the following seven defendants: (1) the City of Reading; (2) Arwin Santee, Plaintiff's ex-girlfriend; (3) Thomas K. Fleming, an officer of the Reading Police Department; (4) Wally Scott, a magisterial district judge at the time of the events giving rise to the complaint; (5) Kyley[2] Scott, a security guard; (6) Fabian Negron, a resident of Reading; and (7) Christian Mora, an "off-duty" police officer at the time of the events giving rise to Plaintiff's claims against him. In early 2013, Plaintiff was dating Santee. As the registration for his car had expired and his license had been suspended, he registered his car under Santee's name because "she had a valid drivers license and could make the car street legal whereas the plaintiff could not and risked the car being impounded and numerous citations." (Compl. ¶ 17.)

---

[1] The following facts are taken from the complaint and exhibits attached to the complaint.
[2] Misspelled in the complaint as Kylye.

1

In April of 2013, Plaintiff ended his relationship with Santee and decided to move from Reading to Philadelphia. Santee, "still upset over the break up [according to Plaintiff,] began to call and harass [him] over money issues along with citations she'd been billed for under [the car]." (Compl. ¶ 32.) On May 14, 2013, Santee contacted Plaintiff and told him to take the car out of her name. Plaintiff responded that "he was strapped for money at the time . . . and would pay off the tickets and take the car out of her name as soon as possible." (*Id.* ¶ 34.)

Three days later, Santee contacted the Reading Police Department about Plaintiff having taken the car. She told Officer Fleming, who investigated the complaint on May 20th, that she had arranged with Plaintiff to park the car on his block, and that Plaintiff was only permitted to move the car on street cleaning days. She also told Officer Fleming that she had spoken with Plaintiff on May 15th, informed him that she wanted the car back, and arranged to pick it up on the 17th at a designated address. The car was not at the agreed-upon address on the 17th. Santee informed Officer Fleming that her subsequent efforts to get in touch with Plaintiff were unsuccessful, and that she was informed by Plaintiff's family that he had moved to Philadelphia and taken the car with him.

On May 20, 2013, based on Santee's report and his investigation, Officer Fleming filed a criminal complaint against Plaintiff for unauthorized use of a motor vehicle in violation of 18 Pa. Cons. Stat. § 3928(a). The complaint reflects that Santee contacted Plaintiff's family in an effort to locate him, but that none of his family members had an exact address or telephone number for him. Plaintiff alleges that Officer Fleming never made any efforts himself to contact Plaintiff or his family.

On June 19, 2013, Plaintiff went to the magisterial district justice office in Reading to pay his tickets. He was ultimately escorted to a courtroom, where he was informed by Magisterial

District Judge Wally Scott that a warrant was out for his arrest based on the complaint Officer Fleming filed against him. Judge Scott read the charge to Plaintiff in court and Plaintiff denied guilt. Plaintiff was then given paperwork by Kyley Scott, a security guard. While he was reading, Judge Scott called Santee to inquire as to how she wanted to proceed. Upon hanging up, Judge Scott read Plaintiff his rights. Plaintiff alleges that he was confused by the paperwork and what was happening in the courtroom, and felt as though he required an attorney. Accordingly, he alleges that he excused himself to use the restroom and call his attorney.

As he left the courtroom, Plaintiff did not abide by Kyley Scott's order to leave his belongings. Kyley Scott then stated "oh he's not coming back!" Judge Scott left the bench in what appears to have been an effort to stop Plaintiff and allegedly shoved Plaintiff. Kyley Scott also allegedly hit and grabbed Plaintiff. Plaintiff ran outside, followed by Judge Scott and Kyley Scott, who were "yelling for people on the street to grab the plaintiff." Plaintiff jumped on his motorcycle, but defendant Negron jumped on Plaintiff in an effort to get him off of the motorcycle. Plaintiff was eventually able to get away, but was followed by defendant Mora, an off duty police officer who saw what was happening. Plaintiff ended up crashing his motorcycle. Mora approached Plaintiff with his gun drawn, allegedly punched Plaintiff in the face, and took the keys to the motorcycle. Plaintiff began running and escaped on foot. He suffered multiple injuries as a result of the day's events and subsequently missed a court date concerning charges for which he had been out on bail. Plaintiff subsequently turned himself in and was committed to the Berks County Jail. On September 20, 2013, Judge Scott dismissed the charge for unauthorized use of a motor vehicle.

Based on those facts, Plaintiff asserts constitutional claims and state law claims against the defendants. His claims can be grouped into two categories. First, he asserts claims based on the

3

filing of the criminal complaint for unauthorized use of a motor vehicle and the prosecution of that claim, including false arrest, false imprisonment, and malicious prosecution claims under § 1983 and state law. Next, he asserts claims based on the events of June 19, 2013. Plaintiff seeks a declaration that his constitutional rights were violated and damages.

## II.    STANDARD OF REVIEW

The Court grants Plaintiff leave to proceed *in forma pauperis*. Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Additionally, the Court may dismiss claims based on an affirmative defense if the affirmative defense is obvious from the face of the complaint. *See Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006); *cf. Ball v. Famiglio*, 726 F.3d 448, 459 (3d Cir. 2013). As Plaintiff is proceeding *pro se*, the Court construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III.   DISCUSSION

### A. Claims Based on the Events of June 19, 2013

Plaintiff brings numerous claims in connection with the events of June 19, 2013, based essentially on allegations that the defendants who chased him on that day assaulted him, caused him emotional distress, and/or violated his constitutional rights in various respects. Those tort claims and § 1983 claims are governed by Pennsylvania's two-year statute of limitations. *See* 42

Pa. Cons. Stat. § 5524; *Wallace v. Kato*, 549 U.S. 384, 387 (2007). The limitations period begins to run from the time "the plaintiff knew or should have known of the injury upon which [his] action is based." *Sameric Corp. of Del., Inc. v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998). Pursuant to the prison mailbox rule, a prisoner's complaint is considered filed at the time he hands it over to prison authorities for forwarding to the Court. *See Houston v. Lack*, 487 U.S. 266, 276 (1988).

Plaintiff knew or should have known on June 19, 2013 that he was injured by what occurred in the courtroom and the defendant's efforts to apprehend him. However, he did not file this action until July 30, 2015, more than two years after his claims accrued.[3] Accordingly, all of Plaintiff's claims based on the events of June 19, 2013 are time-barred. That conclusion disposes of all claims against Kyley Scott, Fabian Negron, and Christian Mora.

### B. Plaintiff's Remaining Claims Against Judge Scott, Officer Fleming, and the City of Reading

To the extent any further claims against Judge Scott, Officer Fleming, and the City of Reading—for Fourth Amendment false arrest, false imprisonment, and malicious prosecution claims and related state law claims—are not also time-barred, they fail for other reasons. To state a claim for false arrest, false imprisonment, and malicious prosecution under the Fourth Amendment or Pennsylvania law, a plaintiff must allege facts establishing the absence of probable cause for his detention and prosecution. *See Kossler v. Crisanti*, 564 F.3d 181, 186 (3d Cir. 2009) (en banc); *Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995); *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994). "[P]robable cause to arrest exists when the facts and

---

[3] The record does not specifically reflect when Plaintiff delivered the complaint to prison authorities for mailing, but it is twice dated July 30, 2015, in conjunction with Plaintiff's signature, indicating it left his possession no earlier than that date, and it was received by the Court on August 3, 2015.

circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Orsatti*, 71 F.3d at 483. Under Pennsylvania law, a person is guilty of the offense of unauthorized use of a motor vehicle "if he operates the automobile, airplane, motorcycle, motorboat, or other motor-propelled vehicle of another without consent of the owner." 18 Pa. Cons. Stat. Ann. § 3928(a); *see also Commonwealth v. Carson*, 592 A.2d 1318, 1321 (Pa. Super. Ct. 1991) ("[A] conviction for unauthorized use of a vehicle must be predicated on proof that the defendant operated the vehicle without the owner's consent and that the defendant knew or had reason to know that he lacked the owner's permission to operate the vehicle.").

Plaintiff's complaint establishes that Santee was the registered owner of the car. The complaint also establishes that Santee reported to Officer Fleming that: (1) she had an agreement with Plaintiff that he could only move the car on the days the street sweeper came; (2) she had informed Plaintiff that she wanted the vehicle returned to her and arranged to pick it up from a specific location; (3) the car was not at the agreed-upon location when she attempted to retrieve it; and (4) her subsequent efforts to get in touch with Plaintiff were unsuccessful because he moved to Philadelphia and she had no working phone number or address for him. Those facts establish probable cause for the criminal complaint against Plaintiff and related arrest warrant. Accordingly, Plaintiff cannot state a claim for false arrest, false imprisonment, or malicious prosecution against Officer Fleming, Judge Scott, or the City of Reading.[4] Additionally, Plaintiff's claims against Judge Scott based on acts he took while presiding over Plaintiff's

---

[4] The existence of probable cause is also fatal to any intentional infliction of emotional distress or defamation claims that Plaintiff sought to raise against those defendants. Furthermore, any defamation claims are barred by Pennsylvania's one-year statute of limitations. *See* 42 Pa. Cons. Stat. Ann. § 5523.

criminal case are barred by absolute judicial immunity. *See Gallas v. Supreme Court of Pa.*, 211 F.3d 760, 768 (3d Cir. 2000); *Langella v. Cercone*, 34 A.3d 835, 838 (Pa. Super. Ct. 2011).

### C. Claims Against Santee

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). To the extent Plaintiff is attempting to bring constitutional claims against Santee pursuant to § 1983, his claims fail because nothing in the complaint plausibly suggests that Santee acted under the color of state law.[5] To the extent Plaintiff has any timely state law claims against Santee, there is no independent basis for subject matter jurisdiction over those claims because the parties are not diverse for purposes of 28 U.S.C. § 1332(a). The Court will not exercise supplemental jurisdiction having dismissed Plaintiff's federal clams.

### IV.   CONCLUSION

For the foregoing reasons, the Court will dismiss the complaint with prejudice for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), with the exception of Plaintiff's state law claims against Santee, which will be dismissed for lack of subject matter jurisdiction. As Plaintiff cannot cure the defects in his claims, amendment would be futile. An appropriate order follows.

---

[5] That Santee filed a complaint with police does not render her a state actor for purposes of § 1983. *See Van Tassel v. Lawrence Cnty. Domestic Relations Section*, 659 F. Supp. 2d 672, 699 (W.D. Pa. 2009) ("Courts have recognized that the filing of a private criminal complaint is not sufficient to establish that a private individual is a state actor for § 1983 purposes.") *aff'd*, 390 F. App'x 201 (3d Cir. 2010) (per curiam).

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RAMON VASQUEZ** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **CITY OF READING, et al.** | : | **NO. 15-4297** |

**ORDER**

AND NOW, this 11th day of August, 2015, upon consideration of Plaintiff's motion to proceed *in forma pauperis* and his *pro se* complaint, it is ORDERED that:

1. Leave to proceed *in forma pauperis* is GRANTED.

2. Plaintiff, Ramon Vasquez, #09-5214, shall pay the full filing fee of $350 in installments, pursuant to 28 U.S.C. § 1915(b). Based on the financial information provided by Plaintiff, he is not assessed an initial partial filing fee. The Warden or other appropriate official at Berks County Jail or at any other prison at which Plaintiff may be incarcerated shall deduct from Plaintiff's inmate trust fund account, each time that Plaintiff's inmate trust fund account exceeds $10, an amount no greater than 20 percent of the money credited to his account during the preceding month and forward that amount to the Clerk of the United States District Court for the Eastern District of Pennsylvania, 601 Market Street, Room 2609, Philadelphia, PA 19106, to be credited to Civil Action No. 15-4297.

3. The Clerk of Court is directed to send a copy of this order to the Warden of the Berks County Jail.

4. The complaint is DISMISSED for the reasons stated in the Court's Memorandum. Plaintiff's state law claims against defendant Santee are DISMISSED for lack of subject matter

jurisdiction. His remaining claims are DISMISSED with prejudice for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

     5.     The Clerk of Court shall CLOSE this case.

**BY THE COURT:**

*s/JEFFREY L. SCHMEHL*
**JEFFREY L. SCHMEHL, J.**